## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KEVIN RAZZOLI,                         :
                                       :
          Plaintiff,                   :   CIVIL NO. 3:CV-06-1833
                                       :
     vs.                               :   (JUDGE VANASKIE)
                                       :
SECRETARY OF NAVY, et al.,             :
                                       :
          Defendants.                  :


## M E M O R A N D U M

_____Kevin Razzoli filed this civil rights action on September 18, 2006.  At the time, he was

confined at the Lackawanna County Prison ("LCP"), Pennsylvania.  He has since been

transferred to the United States Penitentiary at Allenwood (USP-Allenwood), Pennsylvania.

The complaint, as submitted by Razzoli, is titled "Complaint/Brief in Support 42 U.S.C. § 1983/

Bivens Action & Request for Permanent Injunction 42 U.S.C. § 1985."  (Dkt. Entry 1.)  Named

as Defendants are the following Federal employees: the Secretary of the Navy; former United

States Attorney General Gonzalez; United States Parole Case Analyst Lynne Jenkins; and

United States Probation Officer William McCarthy.  Also named as Defendants are the

Lackawanna County Prison ("LCP") and Janine Donate, Warden at LCP, as well as the

Scranton Police Department and Scranton Police Officer Dennis Lukasewicz.[1]  Razzoli's *pro se*

pleading sets forth claims related to (1) his arrest by the Scranton Police Department following

his fourth release on parole; (2) his resulting confinement in the Lackawanna County Prison;

and (3) the subsequent revocation of parole by the USPC.  In this Memorandum, the Court will

address several of the motions pending in this action.

I.      **Allegations in the Complaint**

        The complaint submitted by Razzoli is rambling and, in many parts, unintelligible.

However, in construing the submission liberally, see Haines v. Kerner, 404 U.S. 519, 520-21

(1972), the complaint appears to contain the following claims.  Razzoli asserts that he was

falsely arrested by the Scranton Police Department pursuant to a Pennsylvania statute that

does not exist.  He maintains that United States Probation Officer William McCarthy and USPC

employee Lynne Jenkins authorized his detention at the Lackawanna County Prison knowing

the LCP to be unsafe.  He further alleges that Jenkins refused to conduct a local revocation

hearing, and that McCarthy failed to provide proper details regarding the state charges to the

---

[1] Razzoli also named the following Doe Defendants: U.S. Parole Commissioners and Five Unknown U.S. Department of Justice Employees.  In a Memorandum and Order issued on August 28, 2007, Plaintiff was afforded fifteen (15) days to provide the Court with the identities of the Doe Defendants so that service of the complaint could be achieved.  He was advised that the failure to do so would result in the dismissal of said Defendants from this action. (Dkt. Entry 59.)  Because the Doe Defendants have not been identified in accordance with the Court's directive, they will be dismissed.

2

USPC.  He claims that LCP and Warden Donate were deliberately indifferent to his safety because the double bunk beds at the prison do not have safety ladders to access the top bunk. As a result, he claims to have suffered a broken foot and was made to wait nine (9) days for medical attention.  He complains about the adequacy of the LCP law library and how he was not afforded the opportunity to contact the USPC. He also contends that Warden Donate refused to answer his grievances, thereby denying him access to the courts.  The only other claims which appear to be asserted by Razzoli are that the Secretary of the Navy has not provided him with a naval clemency hearing while confined at the LCP.  Razzoli requests declaratory, injunctive and monetary relief.

## II.   Preliminary Motions

### A.   Motions for Counsel

Previously, by Memorandum and Order dated August 28, 2007, the Court denied a motion filed by Razzoli seeking the appointment of counsel in this matter.  (Dkt. Entry 59.) Since that time, he has filed two additional documents that the Clerk of Court has docketed as requests for counsel.  (Dkt. Entries 67, 79.)  In reviewing these filings, it is clear that the first document titled a "Request for Political Prisoner/Asylumn [sic] Statis [sic] Hearing" (Dkt. Entry 67), is not a request for counsel.  Rather, Razzoli seeks political prisoner status and released to Venezuela.  Because Razzoli challenges the fact and/or duration of his confinement, this filing will be dismissed, without prejudice, to any right Razzoli may have to pursue this issue in a

habeas corpus action.  See Preiser v. Rodriguez, 411 U.S. 475 (1973).

The second filing is a consolidated motion and brief in support of the appointment of counsel.  Razzoli seeks counsel based upon his allegations that (1) he is not versed in the law; (2) his efforts to access the courts in this case are being interfered with due to mail tampering; and (3) he is being subjected to "S.E.R.E. tactics & related electronic devices against his will." (Dkt. Entry 79.)  He also contends that he is being illegally confined and subjected to racial injustices.

The standards applied by the Court in addressing a request for the appointment of counsel in a civil rights matter were thoroughly set forth in the Memorandum and Order of August 28, 2007, and will not be repeated herein.  (Dkt. Entry 59.)  Whether Plaintiff's case has some arguable merit in fact or law has yet to be determined.  Presently pending is a ripe motion to dismiss/for summary judgment filed by the United States Defendants.  A motion for summary judgment has also been filed by the Scranton Police Department, but not yet opposed by Razzoli.  No dispositive motion has been filed by the Lackawanna County Defendants.  It is abundantly clear that Razzoli is experiencing no trouble communicating with this Court.  He is an accomplished litigator who peppers the Court with constant filings, all setting forth pages of argument and citation to pertinent case law.  There is no question, based upon his filings, that he does have regular access to a law library.

In addition, any challenges to the fact or duration of his confinement are not legitimate

4

arguments in support of the appointment of counsel, as such claims are not properly pursued in this civil rights matter.  See Preiser, 411 U.S. at 489.  Further, his attempts to add new claims to this action via the instant motion are also inappropriate.  For these reasons, as well as those previously set forth in the Memorandum and Order of August 28, 2007, the request for counsel will be denied without prejudice.

### B.    Motion to Amend

Also pending is Razzoli's motion to amend the complaint.  (Dkt. Entry 73.)  Rule 15(a) of the Federal Rules of Civil Procedure provides this Court with discretion to grant or deny leave to amend a pleading.  Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971).  The rule, however, advises that "leave shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), and, in general, courts liberally permit parties to amend their pleadings. See Boileau v. Bethlehem Steel Corp., 730 F.2d 929, 938 (3d Cir. 1984); Cornell & Co. v. Occupational Safety & Health Review Comm'n, 573 F.2d 820, 823 (3d Cir. 1978).

Despite this general liberality, the Supreme Court enumerated specific factors that may justify the denial of leave to amend.  See Foman v. Davis, 371 U.S. 178, 182 (1962).  These factors include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, [and] futility of amendment."  Id. at 182; see also Bailey v. United Airlines, 279 F.3d 194 (3d Cir. 2002).  A denial of leave to amend where none of these factors is present is an abuse

5

of discretion.  Alvin v. Suzuki, 227 F.3d 107, 121 (3d Cir. 2000).  "It is well-settled that prejudice to the non-moving party is the touchstone for the denial of an amendment."  Cornell & Co., 573 F.2d at 823.

The motion submitted by Razzoli is basically incoherent with the exception that he wants to add Racketeering Act claims and name new Defendants, which include various federal probation officers, FBI and CIA agents and employees of the United States Penitentiary of Allenwood, whom he alleges are using "C.I.A. and F.B.I. equipment to retaliate & impede court action, also medical and dental malpractice."  (Dkt. Entry 73 at 2.)  Clearly, these issues are well outside the realm of the instant action.  Not only are new issues and new Defendants proposed, but also undue prejudice would certainly result to the existing Defendants if such an amendment to the existing complaint were permitted.  Accordingly, the motion will be denied without prejudice to any right Razzoli may have to pursue these claims in a separate action.

C.    Motion for Recusal

Plaintiff filed a motion on April 30, 2007, requesting the recusal of Judge Edwin Kosik from this case.  (Dkt. Entry 44.)  This motion is obviously now moot in light of the Order issued on September 11, 2007, wherein Judge Kosik recused himself and the matter was reassigned.  (Dkt. Entry 63.)  In reviewing the motion for recusal, Plaintiff also appears to challenge his confinement pursuant to the parole detainer/resulting confinement following his parole violation in Lackawanna County.  He requests this Court to issue an order to release him.  Again, for

reasons previously set forth, this issue is not properly pursued in a civil rights action.  Any

challenge to the revocation of parole must be raised in a habeas corpus petition.  See Preiser v.

Rodriguez, 411 U.S. 475 (1973).  As such, the instant motion will be denied.

### D.      Motion for Court-ordered Medical Treatment

Plaintiff requests the Court to order medical evaluations to be performed by a

neurologist, oncologist, urologist and cardiologist.  In support of his requests, he cites to (1)

problems he has experienced in the past, specifically a removal of a tumor while in the United

States Navy; (2) a family history of medical problems; and (3) current medical symptoms he is

experiencing while confined at USP-Allenwood.  (Dkt. Entry 53.)

Federal Rule of Civil Procedure 35(a) provides a method by which a court can order a

physical or mental examination of a party when mental or physical condition is in controversy in

the lawsuit pending before the Court.  In the instant action, the conditions of which Razzoli

complains are not at issue in the instant action.  The only medical issue in this case is the

alleged inadequate medical care at the LCP for injury to Razzoli's foot.  In the motion Razzoli

sets forth allegations regarding the lack of medical treatment for conditions arising from the

"unauthorized and unconsentual subjection to behavioriol [sic] modificational programs

desigened [sic] for enemy combatants and spys [sic]" by employees at USP-Allenwood."  (Id. at

4.)  These matters are not before the Court in the pending action.[2]  Accordingly, the request for court-ordered medical evaluations will be denied.

### E.    Motions for Default

On July 13, 2007, Plaintiff filed a document entitled "Motion & Brief in Support for Entry of Default Judgment" under Federal Rule of Civil Procedure 55(a).  (Dkt. Entry 55.)  The motion fails to identify which Defendant(s) have allegedly defaulted.  More importantly, the entire basis for the request for entry of default is the alleged S.E.R.E. tactics being used against Razzoli by employees at U.S.P. Allenwood.  As set forth above with regard to other motions filed in this action, Razzoli contends that U.S.P. Allenwood employees are impeding his thought process via electronic devices causing all sorts of physical and mental harm to him.

Pursuant to Rule 55(a), entry of default is appropriate when a party has failed to plead or otherwise defend and this fact is set forth in an affidavit submitted to the Court.  In the instant action, Razzoli's request is actually one for injunctive relief, and not entry of default.  Further, he has not submitted the affidavit required by Rule 55(a).

To the extent the Court were to construe his motion as one for preliminary injunctive

---

[2] Further, the Court notes that the exhibits attached to the motion reveal that officials at USP-Allenwood have responded to the Inmate Requests to Staff submitted by Razzoli regarding his medical issues, and have advised him to sign up for sick call, where any testing found to be medically necessary will be ordered.  (Dkt. Entry 53, Ex. Inmate Request to Staff.)

relief, it would be denied.  Preliminary injunctive relief is extraordinary in nature and should issue in only  limited circumstances.  See American Tel. and Tel. Co. v. Winback and Conserve Program, Inc., 42 F.3d 1421, 1426-27 (3d Cir. 1994), cert. denied, 514 U.S. 1103 (1995). Moreover, issuance of such relief is at the discretion of the trial judge.  Orson, Inc. v. Miramax Film, Corp., 836 F. Supp. 309, 311 (E.D. Pa. 1993).  In determining whether to grant a motion seeking preliminary injunctive relief, courts consider the following factors:

> (1) likelihood of success on the merits;
> (2) irreparable harm resulting from a denial of relief;
> (3) the harm to the non-moving party if relief is granted; and
> (4) the public interest.

United States v. Bell, 238 F. Supp. 2d 696, 699 (M.D. Pa. 2003)(internal citations omitted).  It is the moving party that bears the burden of satisfying these factors. (Id.)

The individuals against whom the injunctive relief is sought are not parties to this lawsuit.  By way of the instant motion, Plaintiff seeks to interject new claims and defendants into this action.  His remedy, however, is to file a new civil rights action to pursue these claims. Further, there is no evidence of irreparable injury.  While he contends that unidentified employees at U.S.P. Allenwood are using electronic devices to alter his though process, there is no evidence that there is any merit to such delusional allegations or the symptoms Razzoli alleges to be experiencing.  Accordingly, any request for injunctive relief will be denied.

Also pending on the docket is a filing by Razzoli on October 17, 2007, titled "Notice of

9

Time Barred" (Dkt. Entry 68).  In reviewing this filing, while not labeled a motion for default, it appears to be a request for default against Defendants Scranton Police and Officer Lukasewicz.  These Defendants were served with the complaint on November 28, 2006.  (Dkt. Entry 17.)  An answer was not filed until September 13, 2007.  A motion for summary judgment was thereafter submitted on October 9, 2007.  Plaintiff filed his motion for default on October 17, 2007.

Even if the Court were to construe Razzoli's filing as a request for entry of default, he did not submit the affidavit required under Fed. R. Civ. P. 55(a).  Further, by the time he filed the request, Defendants had already submitted both an answer to the complaint and a motion for summary judgment.[3]  Accordingly, any request for default will be denied.

## III.   United States Defendants' Motion to Dismiss/for Summary Judgment

The United States Defendants have filed a motion to dismiss or, in the alternative, for summary judgment.  (Dkt. Entry 33.)  Filed in support of the motion is a brief, exhibits and a

---

[3]  While Razzoli is correct in stating that the Court included a footnote in a Memorandum and Order issued on August 28, 2007, stating that the Scranton Police Defendants had not yet filed a response to the complaint (Dkt. Entry 59 at 4, n.1), he did not pursue the issue of default until after an answer and motion for summary judgment were filed.  While Defendants' filings are clearly untimely, and even if Razzoli had properly moved for the entry of default, entry of judgment by default is within the discretion of the trial court.  Hritz v. Woma Corp., 732 F.2d 1178, 1180 (3d Cir. 1984).  Further, the United States Court of Appeals for the Third Circuit has emphasized that the preference is that "cases be disposed of on the merits whenever practicable."  Id. at 1180-81 (citations omitted).

statement of material facts.  (Dkt. Entries 37, 38.)

### A.    Motion to Dismiss Standard

A defendant may attack a complaint by a motion under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted.  In deciding a motion to dismiss under Rule 12(b)(6), the court is required to accept as true all of the factual allegations in the complaint, Erickson v. Pardus, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007), and all reasonable inferences permitted by the factual allegations, Watson v. Abington Twp., 478 F.3d 144, 150 (3d Cir. 2007), viewing them in the light most favorable to the plaintiff.  Kanter v. Barella, 489 F.3d 170, 177 (3d Cir. 2007).  Accord Phillips v. County of Allegheny, No. 06-2869, 2008 WL 305025, at *3, 5 (3d Cir. Feb. 5, 2008).  If the facts alleged are sufficient to "raise a right to relief above the speculative level" such that the plaintiff's claim is "plausible on its face," a complaint will survive a motion to dismiss.  Bell Atlantic Corp. v. Twombly, ___ U.S. ___, 127 S. Ct. 1955 at 1965, 1974 (2007); Phillips, 2008 WL 305025, at *6; Victaulic Co. v. Tieman, 499 F.3d 227, 234 (3d Cir. 2007).  This requirement "calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" necessary elements of the plaintiff's cause of action.  Twombly, 127 S. Ct. at 1965, quoted in Phillips, 2008 WL 305025, at *6.

Generally, in ruling on a motion to dismiss, a district court relies on the complaint, attached exhibits, and matters of public record.  Sands v. McCormick, 502 F.3d 263 (3d Cir. 2007)(quoting Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d

Cir. 1993)).  The court may consider "undisputedly authentic document[s] that a defendant

attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the [attached]

documents." Pension Benefit, 998 F.2d at 1196.  Additionally, "documents whose contents are

alleged in the complaint and whose authenticity no party questions, but which are not physically

attached to the pleading, may be considered." Pryor v. Nat'l Collegiate Athletic Ass'n, 288 F.3d

548, 560 (3d Cir. 2002); see also U.S. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 388 (3d

Cir. 2002).  However, the court may not rely on other parts of the record in making its decision.

Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994).

A court must grant leave to amend before dismissing a civil rights complaint that is

merely deficient.  See, e.g., Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d

247, 252 (3d Cir. 2007); Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001); Shane v.

Fauver, 213 F.3d 113, 116-17 (3d Cir. 2000).  "Dismissal without leave to amend is justified

only on the grounds of bad faith, undue delay, prejudice, or futility." Alston v. Parker, 363 F.3d

229, 236 (3d Cir. 2004).

### 1.    Sovereign Immunity

Razzoli's claims for damages against the federal Defendants sued in their official

capacities are barred by sovereign immunity.  The United States is immune from suit absent an

explicit waiver of sovereign immunity. Block v. North Dakota ex rel. Board of University and

School Lands, 461 U.S. 273, 280 (1983); United States v. Mitchell, 445 U.S. 535, 538 (1980).

This immunity, which is "jurisdictional in nature," FDIC v. Meyer, 510 U.S. 471, 475 (1994),

extends to government agencies and employees sued in their official capacities.  See Antol v.

Perry, 82 F.3d 1291, 1296 (3d Cir. 1996); Williamson v. United States Department of

Agriculture, 815 F.2d 368, 373 (5th Cir. 1987).  Congress has not waived sovereign immunity

for damage claims for constitutional violations.  See, e.g., Clark v. Library of Congress, 750

F.2d 89, 103-04 (D.C. Cir. 1984).  As such, to the extent the federal Defendants are sued for

monetary damages in their official capacities, they are entitled to sovereign immunity.

### 2.     Claims brought pursuant to 42 U.S.C. §§ 1983 and 1985

The federal Defendants also maintain that to the extent Razzoli seeks relief against

them pursuant to 42 U.S.C. §§ 1983 and 1985, such claims should be dismissed.  Defendants

are correct in stating that the use of these statutory provisions as alternative bases for relief

against them is inappropriate.  Section 1983 concerns only action taken under the authority of

sate law.  It is well established that liability under Section 1983 will not attach for actions taken

under federal law.  See Brown v. Philip Morris, Inc., 250 F.3d 789, 800 (3d Cir. 2001).  Because

the complaint alleges that the federal Defendants were acting within the capacities of their

federal employment, he has failed to state a claim upon which relief may be granted under

Section 1983.  See Shoman v. United States Customs and Border Protection, Civ. A. No. 07-

994, 2008 WL 203384, at *3 (W.D. Pa. Jan. 24, 2008).  Because Plaintiff is a federal inmate

and seeks to bring a civil rights action against these federal employees, he must file a

complaint pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971), a case in which the Supreme Court created a counterpart to 42 U.S.C. § 1983 and authorized suits against federal employees in their individual capacities. While the federal Defendants are entitled to the dismissal of any claims against them brought pursuant to § 1983, claims brought under § 1331 are properly asserted as Razzoli labels his complaint as a combined § 1983 and § 1331 action.[4]

### 3.   Failure to provide clemency hearing

The only claim asserted against Defendant Secretary of Navy is the failure to provide Razzoli with annual clemency hearings.  In addressing this claim, the Court takes judicial notice of two prior habeas corpus actions filed by Razzoli in this Court in which he raised the claim that he is entitled to annual clemency hearings by the Secretary of the Navy/Naval Clemency and Parole Board ("NCPB").  On both occasions, his claim was denied on the merits, and later affirmed by the Third Circuit Court of Appeals.  See Razzoli v. FCI Allenwood, 200 Fed. Appx.

---

[4] To the extent the federal Defendants seek dismissal of claims brought pursuant to 42 U.S.C. § 1985, the motion is granted.  First, other than the caption of the complaint, Razzoli fails to refer to said statute or relate it to any of the Defendants in the body of the complaint. Further, while state action is not a pre-requisite to liability under Section 1985, see Griffin v. Breckenridge, 403 U.S. 88 (1971), absent a waiver of sovereign immunity, the federal government is shielded from suit against them in their official capacities.  See FDIC v. Meyer, 510 U.S. 471, 475 (1994).  No such waiver exists.  Kentucky v. Graham, 473 U.S. 159, 165-67 (1985).  To the extent the federal Defendants can be sued in their individual capacities, the complaint contains insufficient, if any, allegations of conspiracy to support claims under § 1985.

166, 168-69 (3d Cir. 2006); Razzoli v. U.S. Navy, 248 Fed. Appx. 473 (3d Cir. 2007).

     To the extent Razzoli now files this civil rights action in an attempt to obtain a clemency hearing, his claim is subject to dismissal as he cannot seek habeas relief in a civil rights action. Preiser, 411 U.S. at 489-90.  More importantly, the claim is barred under the doctrine of collateral estoppel.  Collateral estoppel precludes parties from litigating an issue previously resolved in a prior judicial proceedings and "serves the twin purposes of protecting litigants from assuming the burden of re-litigating the same issue with the same party, and promoting judicial economy through preventing needless litigation."  McNeil v. Owens-Corning Fiberglas Corp., 545 Pa. 209, 680 A.2d 1145, 1148 (Pa. 1996); see Peloro v. United States, 488 F.3d 163, 174-75 (3d Cir. 2007).  As a general rule, collateral estoppel applies "[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment."  Nat'l R.R. Passenger Corp. v. Pa. Pub. Util. Comm'n, 288 F.3d 519, 525 (3d Cir. 2002).  After the issue has been resolved by a court, that court's "determination is conclusive in a subsequent action between the parties, whether on the same or a different claim."  Id.

     The issue of whether Razzoli is entitled to any further clemency hearings by the United States Navy has already been decided in a prior adjudication.  There was a final judgment on the merits in an action where Razzoli was a party and had a full and fair opportunity to litigate the issue.  He is now precluded from raising the issue anew in this civil rights action.

###### 4.     Absolute Immunity

Razzoli contends that Lynne Jenkins, USPC Defendant, refused to conduct a local revocation hearing, conducting instead an institutional hearing.  Jenkins is entitled to absolute immunity with regard to any such claim brought against her in her individual capacity.

It is well recognized that members of the judiciary are entitled to absolute immunity.  See Pierson v. Ray, 386 U.S. 547 (1967). Absolute immunity has also been extended to those performing judge-like or prosecutor-like functions within a federal agency.  Butz v. Economou, 438 U.S. 478 (1978). Most federal courts, including the Third Circuit Court of Appeals, have concluded that activities "inexorably connected with the execution of parole revocation procedures" are entitled to absolute immunity.  Walrath v. United States, 35 F.3d 277, 282 (3d Cir. 1994), quoting Trotter v. Klincar, 748 F.2d 1177 at 1182 (7th Cir. 1984).  While the United States Supreme Court has never held that parole officials are entitled to absolute immunity, the Court has expressed its approval of the reasoning set forth in Sellars v. Procunier, 641 F.2d 1295 (C.A. Cal. 1981), and other appellate court decisions in which parole officials have been granted absolute immunity.  See Cleavinger v. Saxner, 474 U.S. 193, 200-01 (1985).   In Sellars, and many other cases, the doctrine of absolute immunity has been extended to parole officers whose responsibilities are closely analogous to the adjudicative functions of a judge, or are intimately associated with the judicial process itself.  Walrath, 35 F.3d at 281-82.  Thus, if the  challenged act arises from an "adjudicatory duty," as distinguished from an executive,

16

administrative, or investigative duty, absolute immunity has been held to shield the parole officer from liability. For example, absolute immunity has been found to apply to a parole board member's decision to bring charges against a parolee, as well as any decision to grant, deny or revoke parole. See Keller v. Pa. Bd. of Probation and Parole, 240 Fed. Appx. 477 (3d Cir. 2007)(finding that interviewing for and deciding whether to grant re-parole was adjudicatory); Wilson v. Rackmill, 878 F.2d 775 (3d Cir. 1989)(parole board haring examiners act in adjudicatory capacity).  Absolute immunity has also been found to apply with regard to the scheduling of parole revocation proceedings, as the proceedings are an integral part of the revocation decision itself, and functionally comparable to the decisions of a judge concerning the scheduling of a trial.  Walrath, 35 F.3d at 283 (finding absolute immunity from Bivens suit for damages applied to USPC officials who allegedly delayed scheduling parole revocation hearing)[5]; Trotter, 748 F.2d at 1182 (Parole Board officials who declined a request to conduct a second parole revocation hearing were entitled to absolutely immunity).

In light of the foregoing, it is clear that Defendant Jenkins is entitled to absolute immunity with regard to her decision not to conduct a local revocation hearing, but rather an institutional hearing.   Accordingly, the motion to dismiss will be granted with regard to Jenkins on this

---

[5]  For purposes of immunity analysis, Bivens actions are not distinguished from civil rights suits brought against state officers pursuant to 42 U.S.C. § 1983 and, as such, the principles applied in § 1983 actions apply with equal force in the case of a federal parole officer. Harlow v. Fitzgerald, 457 U.S. 800, 818 n. 30 (1982)(quoting Butz, 438 U.S. at 504.)

claim.

### B.    Summary Judgment

Summary judgment will be granted if the record establishes that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56©; Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001).  In considering a summary judgment motion, inferences from the underlying facts must be viewed in the light most favorable to the non-moving party.  P.N. v. Clementon Bd. of Educ., 442 F.3d 848, 852 (3d Cir. 2006).

Rule 56© imposes a burden on the moving party to point to an absence of evidence supporting the nonmoving party's case.  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). Once the moving party has met this burden, the burden then shifts to the non-moving party. The party opposing summary judgment "may not rest upon the mere allegations or denials of the . . . pleading."  Saldana, 260 F.3d at 232.  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  The opposing party must "set forth specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e).  Issues of fact are "genuine only if a reasonable jury, considering the evidence presented, could find for the nonmoving party."  Childers v. Joseph, 842 F.2d 689, 693-94 (3d Cir. 1988).  Only disputes over facts that might affect the outcome of the suit will preclude the entry of summary judgment.

18

Id. Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).  Allegations made without any evidentiary support may be disregarded.  Jones v. UPS, 214 F.3d 402, 407 (3d Cir. 2000). The court may not consider evidence on a motion for summary judgment that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387 n.13 (3d Cir. 1999).  Summary judgment must be entered in favor of the moving party "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party." Matsushita, 475 U.S. at 587 (citations omitted).

      1.    **Undisputed Facts**    ___

Razzoli received a general court-martial from the United States Navy on December 1, 1987, for committing violations of the Uniform Code of Military Justice.  With premeditation he attempted to murder ADAN John N. Hartman, a fellow member of the Navy; impede his trial by court-martial; and willfully and wrongfully decoy, carry away and hold Hartman against his will. (Dkt. Entry 37, Ex. 14, Lamoureux Decl. ¶ 3.)  The convening military authority approved the sentence as adjudged on March 22, 1988.  On July 14, 1989, the sentence was affirmed on appeal by the Navy and Marine Corps Criminal Court of Appeals, and Razzoli was dishonorably discharged.  (Id., ¶¶ 4, 5.)

The Naval Clemency and Parole Board ("NCPB") reviewed Razzoli's case annually from November 30, 1988 through February 7, 2001, and clemency was not granted.  The NCPB did

not review Razzoli for parole because he was transferred to a Federal Correctional Institution

on July 13, 1990, prior to becoming eligible for review.  (Id., ¶ 6.)  Individuals transferred to

federal facilities are not under NCPB parole jurisdiction, but the NCPB must continue to review

clemency until their minimum release date, which in this case was September 30, 2001.  (Id.)

Because Razzoli was paroled prior to the minimum release date, the NCPB no longer had

jurisdiction to review clemency.

Razzoli has been paroled on several occasions.  Each time, he violated the conditions of

parole, and parole was subsequently revoked.  He was last paroled on or about July 27, 2006,

to the Middle District of Pennsylvania.  (Dkt. Entry 37, Exs. 1, 2, Certificates of Parole.)  Several

days later, on July 31, 2006, he violated parole conditions.  (Id., Ex. 3,  8/4/06 letter and

Criminal Compl.)  On August 7, 2006, the USPC issued a warrant for Razzoli's arrest.  (Id.,

Exs. 4, 5.)  On August 9, 2006, he pleaded guilty in Lackawanna County Central Court to

obtaining a "comp" room from the Hilton Hotel in Scranton, Pennsylvania, under false

pretenses.  (Id., Ex. 7.)

After serving his state sentence, Razzoli remained in the LCP as a detainee for the

parole violation.  (Id., Ex. 8, Supp. to Warrant.)  On August 28, 2006, Razzoli was notified by

the USPC that probable cause was found to believe that he violated parole, and that a hearing

would be conducted.  (Id., Ex. 9, Revocation Hearing Disclosure.)  Razzoli was thereafter

transferred to the Federal Detention Center in Philadelphia.  A revocation hearing scheduled for

20

November of 2006 was continued at Razzoli's request.  (Id., Exs. 10, 11.)  A hearing was later

conducted by the USPC on December 13, 2006.  The charges against Razzoli were theft of

services and disorderly conduct, as well as the failure to report to a United States Parole

Officer.  (Id., Ex. 12, Hearing Summary at 2-3.) Because the probation officer was unavailable

to testify, no finding was made by the USPC on the "failure to report" charge.  However, based

on the state convictions, the USPC ordered Razzoli's parole revoked and sentenced him to 14

months of imprisonment with a presumptive parole date of October 3, 2007.  (Id., Ex. 13, Notice

of Action.)

### 2.    Qualified Immunity

In the complaint Razzoli alleges that Defendants McCarthy and Jenkins violated his

constitutional rights by authorizing his detention at the Lackawanna County Prison.  He further

maintains that McCarthy failed to provide proper details regarding the state charges against him

to the USPC.  Defendants move for summary judgment with regard to these claims on the

basis of qualified immunity.

The qualified immunity analysis requires a two-step inquiry as set forth in Saucier v.

Katz, 533 U.S. 194 (2001).  First, the court must determine whether the facts alleged show the

defendant's conduct violated a constitutional or statutory right.  Id. at 201; Scott v. Harris, 550

U.S. ____, 127 S. Ct. 1769, 1774 (2007).  After the court has concluded that a constitutional

violation has occurred, it must then determine whether the constitutional or statutory right

allegedly violated was "clearly established." Saucier, 533 U.S. at 202.  To be "clearly

established" in the context of a qualified immunity analysis, "[t]he contours of [the] right must be

sufficiently clear that a reasonable official would understand that what [he or she] is doing

violates that right.  This is not to say that an official action is protect by qualified immunity

unless the very action in question has been previously held unlawful, but it is to say that in light

of pre-existing law the unlawfulness must be apparent."  Gruenke, 225 F.3d at 299 (citing

Anderson v. Creighton, 483 U.S. 635, 640 (1987).  The focus is on whether the official's actions

are objectively reasonable under current federal law – would the official understand that what

he or she is doing violates the right.  Id.

In conducting an analysis of Razzoli's federal constitutional claims, it is imperative for

the Court to first identify what rights, if any, are at issue and determine whether any genuine

issues of material fact exist as to whether such rights were violated.  If the Court concludes that

the Defendants' conduct did violate a clearly established constitutional or statutory right, then it

must deny the defendant the protection afforded by qualified immunity.  Williams v. Bitner, 455

F.3d 186, 190 (3d Cir. 2006); Kaucher v. County of Bucks, 455 F.3d 418, 423 n. 2 (3d Cir.

2006).  The court's analysis of the merits of Razzoli's claims basically merges with its analysis

of the existence of a deprivation of federal rights for purposes of immunity when immunity is

raised at the summary judgment level.  See Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir.

2000); Askew v. Kelchner, No. 04-0631, 2007 WL 763075, at *3 (M.D. Pa. Mar. 7, 2007).

22

Razzoli contends that McCarthy and Jenkins violated his constitutional rights by authorizing his detention at the Lackawanna County Prison.  He does not allege that these individuals were responsible for determining the place of his initial confinement following his arrest in Scranton, or his remaining in the custody of the LCP as a detainee for his parole violation.  In either case, it is well established that Razzoli has no justifiable expectation that he will be incarcerated in a particular prison.  Olim v. Wakinekona, 461 U.S. 238, 245 (1983); Montanye v. Haymes, 427 U.S. 236, 242 (1976); Meachum v. Fano, 427 U.S. 215, reh'g denied, 429 U.S. 873 (1976).  Further, the record is completely devoid of any evidence that McCarthy and/or Jenkins had any role in Razzoli's placement at LCP.  McCarthy's only involvement is that on August 4, 2006, he requested that the USPC issue a warrant and lodge it as a detainer against Razzoli in view of his new criminal conduct on August 2, 2006.  (Dkt. Entry 37, Ex. 3, 8/4/06 Letter.)  Although Defendant Jenkins did sign the warrant application, the warrant was issued by the USPC, not Jenkins.  (Id., Exs. 4-6.)  It is the USPC, under the authority of a United States Parole Commissioner, that authorizes the issuance of a parole violator warrant.  See 28 C.F.R. § 2.98(b)(Warrant may be issued or withdrawn only by Commission or member thereof); see generally Romano v. U.S. Parole Comm'n, 238 Fed. Appx. 861 (3d Cir. 2007).  Jenkins, as a Case Analyst, lacks authority to issue warrants.

The undisputed record reveals that the parole violator warrant was executed by the

United States Marshal Service (Id., Ex. 6, Warrant) at the Lackawanna County Prison following the completion of the state sentence.  There is no evidentiary support that McCarthy or Jenkins had any involvement in Razzoli's placement at the Lackawanna County Prison.   Accordingly, because the undisputed facts fail to demonstrate that Defendants' conduct violated a constitutional right, it is unnecessary to determine whether the right allegedly violated was clearly established.  With regard to the claim of Razzoli's confinement at LCP, summary judgment is warranted in favor of McCarthy and Jenkins.

The next claim to be examined under the qualified immunity analysis is that McCarthy failed to provide accurate information to the USPC with regard to the details of the charges brought against him in Scranton.  Without unnecessary elaboration, the undisputed facts fail to show that McCarthy's conduct violated a constitutional right.  The parole violation letter written by McCarthy to Jenkins on August 4, 2006, requesting the issuance of a warrant by the USPC (Dkt. Entry 37, Ex. 3) and the follow up letter dated August 11, 2006 (Id., Ex. 7), reveal that McCarthy relayed accurately all details with regard to Razzoli's arrest and conviction on the state charges.  Accordingly, McCarthy is entitled to summary judgment on this claim as well.[6]

---

[6]  The only other claim discussed by Defendants with regard to qualified immunity is Jenkins' failure to provide Razzoli with a local revocation hearing.  The Court has already discussed this issue and found Jenkins entitled to absolute immunity on this claim.  Even if Jenkins had been found to not be entitled to absolute immunity, protection would be afforded by qualified immunity.  Pursuant to 28 C.F.R. 2.49(a), a parole violator only has a right to a local revocation hearing if he has not been convicted of a new crime committed while on parole.

**IV.    Conclusion**

For all of the foregoing reasons, the Doe defendants will be dismissed and Razzoli's motions addressed in this Memorandum will be denied.  The United States Defendants' motion to dismiss will be granted as to their arguments of sovereign immunity and absolute immunity, as well as with regard to Razzoli's claims brought pursuant to 42 U.S.C. §§ 1983 and 1985 and claims regarding failure to provide a clemency hearing.  In addition, the United States Defendants' motion for summary judgment will be granted as to Defendants McCarthy and Jenkins.  An appropriate Order follows.

s/ Thomas I. Vanaskie
United States District Judge
Middle District of Pennsylvania

---

Clearly Razzoli does not meet this criteria as he admittedly was convicted of a crime committed while under supervision in August of 2006.  (Dkt. Entry 37, Ex. 7, Attach. 1, Certified Copy of Conviction.)

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


KEVIN RAZZOLI,                              :
                                            :
            Plaintiff,                      :     CIVIL NO. 3:CV-06-1833
                                            :
      vs.                                   :     (JUDGE VANASKIE)
                                            :
SECRETARY OF NAVY, <u>et al.</u>,            :
                                            :
            Defendants.                     :


# O R D E R

_____**NOW, THIS 29th DAY OF MARCH, 2008,** in accordance with the accompanying

Memorandum, **IT IS HEREBY ORDERED AS FOLLOWS:**

1.    The unidentified U.S. Parole Commissioners and Five Unknown U.S.
      Department of Justice Employees Doe Defendants are **dismissed from this
      action.**

2.    Plaintiff's Motions for Counsel (Dkt. Entries 67, 79) are **denied without
      prejudice**.

3.    Plaintiff's Motion to Amend (Dkt. Entry 73) is **denied**.

4.    Plaintiff's Motion for Recusal (Dkt. Entry 44) is **dismissed as moot**.  To the
      extent the motion also seeks habeas corpus relief, the motion is **denied
      without prejudice** to pursue any such claims in a properly filed habeas corpus
      action.

5.    Plaintiff's Motion for Court-ordered Medical Treatment (Dkt. Entry 53) is
      **denied**.

6.      Plaintiff's Motion for Default (Dkt. Entry 55) is **denied**.

7.      Plaintiff's Motion for Default (Dkt. Entry 68) is **denied.**

8.      The Motion to Dismiss/Motion for Summary Judgment filed by the United
        States Defendants (Dkt. Entry 33) is **granted.**  All claims set forth against
        Defendants Attorney General of the United States and the Secretary of the
        Navy are **dismissed**.  The claims set forth against Defendant Jenkins
        regarding failure to conduct a revocation hearing are dismissed.  Summary
        judgment is **granted** with regard to all claims against Defendant McCarthy and
        the remaining claims against Jenkins.

                                            **s/ Thomas I. Vanaskie**
                                            United States District Judge
                                            Middle District of Pennsylvania

2